VI.  TRIAL COUNSEL'S FAILURE TO OBJECT TO THE PROSECUTION'S
     IMPROPER ARGUMENT THAT BOLSTERED THE CREDIBILITY OF OLIVER
     AND SNODDERLY DENIED MR. SHAYKIN HIS SIXTH AND FOURTEENTH
     AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL.

The decision of the Michigan courts involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. 2254(d)(1).

Here the state courts unreasonably applied <u>Strickland v. Washington</u>, 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984), and <u>Berger v. United States</u>, 295 U.S. 78; 55 S.Ct. 629; 79 L.Ed. 1314 (1935).

Based on the facts established by the evidence presented, there was no reasonable basis for the Michigan courts to deny relief. <u>Harrington v. Richter</u>, -- U.S. --, 131 S.Ct. 770, 784; 178 L.Ed.2d 624 (2011).

Counsel acknowledged that the State's case came down to whether the jury believed Oliver and Snodderly. He did not object when Detective Smith testified that after talking to Oliver and Snodderly it was his impression that "there is something to this crime," that he was not "buying what [Mr. Shaykin] was selling," and the prosecutor argued that Smith "realized [Oliver and Snodderly] were telling the truth."

Smith's opinion as to the truthfulness or untruthfulness of other witnesses is inadmissible, M.R.E. 701, and the prosecutor's argument based on this inadmissible evidence was improper.

Counsel's failure to object to this testimony and argument feel below prevailing professional norms and it was prejudicial.

Strickland, 104 S.Ct., 2066, 2068.

That counsel's failure to object was below prevailing professional norms is evidenced by the fact that this objection is so fundamental that it is listed in Robinson & Longhofer, Courtroom Handbook on Michigan Evidence, Common Objections and Responses, p 67 (Thompson-West, 2002). The failure was sufficiently prejudicial that it could have made a difference in the outcome. The jury wanted to read Oliver's and Snodderly's testimony, so jurors clearly had some questions about them. An undecided juror may well have credited the opinion of the police department and prosecutor as to whom to believe and voted to convict Mr. Shaykin. Counsel's failure to object denied Mr. Shaykin effective assistance of counsel.

The Court should grant the writ of habeas corpus because the state courts violated Mr. Shaykin's right to effective assistance of counsel and unreasonably applied Strickland.

VII. THE TRIAL COURT VIOLATED MR. SHAYKIN'S FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL WHEN IT REFUSED AN INVESTIGATOR FOR THE DEFENSE AND DENIED THE DEFENSE DISCOVERY MOTIONS.

The decision of the Michigan courts involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. 2254(d)(1).

Here the state courts unreasonably applied Ake v. Oklahoma, 470 U.S. 68; 105 S.Ct. 1087; 84 L.Ed.2d 53 (1985), Strickland v. Washington, 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984); Rompilla v. Beard, 545 U.S. 374; 125 S.Ct. 2456; 162 L.Ed.2d 360 (2005), Wiggins v. Smith, 539 U.S. 510; 123 S.Ct.

47

2527; 156 L.Ed.2d 471 (2003), and <u>Terry Williams v. Taylor</u>, 529 U.S. 362; 120 S.Ct. 1495; 146 L.Ed.2d 389 (2000).

Based on the facts established by the evidence presented, there was no reasonable basis for the Michigan courts to deny relief. <u>Harrington v. Richter</u>, -- U.S. --, 131 S.Ct. 770, 784; 178 L.Ed.2d 624 (2011).

On August 6, 2009, Mr. Shaykin filed a motion for discovery in which he requested among other things the prosecution witnesses' statements and criminal histories; copies of the color photos in the case; "plea agreements, favors, grants of immunity or other agreements for testimony in connection with this case;" and exculpatory evidence or information. He also filed a motion for disclosure of agreements with or concessions to witnesses. On August 12, 2009 the trial court granted the discovery motion and the prosecutor said, "We offered nothing" to any witness. The court told him to "check with Ohio" about offers to witnesses (8/12/09 Motion transcript, 2-4).

On August 13, 2009 Mr. Shaykin's counsel filed a demand for discovery and preservation of evidence, which also requested witness statements, witnesses' criminal histories, documents and photos, agreements for testimony, and exculpatory evidence. On August 19, Mr. Shaykin filed a motion for discovery of witnesses' criminal histories. He requested convictions and pending charges. The court never ruled on these motion. None of the information was provided.

On September 15, 2009 and October 15, 2009, Mr. Shaykin filed motions to appoint an investigator. At oral argument on

the motions, the prosecutor told the court, "We oppose that [motion]. There is a complete investigative report here. This is nothing but a fishing expedition to create some sort of reversible error which doesn't exist." The court responded, "I agree ... and the motion is denied." (10/21/09 Pretrial Motions Transcript, 22). On the same day the court executed an order denying the motions for an investigator.

Mr. Shaykin's post-trial investigation from prison disclosed extensive criminal histories on Oliver and Snodderly, and reams of impeaching and exculpatory evidence that was not disclosed to the defense prior to trial. Petitioner's Exhibits 1 through 34 and Proposed Exhibits 40 through 48.

In light of the State's less than complete response to his discovery motion, appointment of an investigator was essential to Mr. Shaykin's right to a fair trial and to present his defense. The United States Supreme Court has held, "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." Ake v. Oklahoma, 470 U.S. 68, 76; 105 S.Ct. 1087, 1092; 84 L.Ed.2d 53 (1985). The court explained that the Fourteenth Amendment guarantees criminal defendants "an adequate opportunity to present their claims fairly within the adversary system" and the "basic tools of an adequate defense or appeal." It continued, "We have required that such tools be provided to those defendants who cannot afford to pay for them." 479 U.S., 74; 105 S.Ct., 1093. The only way to do this was for Mr.

49

Shaykin's defense to be able to do the investigation needed to obtain the information the State refused to provide.

The prosecutor's oral response, that there had already been a complete investigation - presumably by police - would be laughable had the trial court not agreed and denied the motion. Under the rationale of the prosecutor and the trial court, the defendant would not need a lawyer because the State already had a perfectly good one who would present all the necessary evidence; the defendant would not need investigators or experts or witnesses because the jury could get the whole story from the prosecution. But in real life that is not what happens, which is why the Supreme Court recognizes that the defendant needs counsel and it own resources "to make the adversarial testing process work ..." Strickland, 104 S.Ct., 2066.

Many decisions of the United States Supreme Court emphasize the importance of an adequate investigation and trial counsel's duty to investigate. Strickland, Rompilla, Wiggins, and Terry Williams. The trial court's denial of an investigator resulted in there being no meaningful pretrial investigation by the defense, denying Mr. Shaykin his Fourteenth Amendment right to a fair trial.

The Court should grant the writ of habeas corpus because the state courts violated Mr. Shaykin's right to effective assistance of counsel and unreasonably applied Ake, Strickland, Rompilla, Wiggins, and Terry Williams.

VIII APPELLATE COUNSEL'S FAILURE TO RAISE THESE ISSUES ON APPEAL
DENIED MR. SHAYKIN HIS FOURTEENTH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL.

The decision of the Michigan courts involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. 2254(d)(1).

Here the state courts unreasonably applied Evitts v. Lucey, 469 U.S. 387; 105 S.Ct. 830; 83 L.Ed.2d 821 (1985), Strickland v. Washington, 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984); Rompilla v Beard, 545 U.S. 374; 125 S.Ct. 2456; 162 L.Ed.2d 360 (2005), Wiggins v. Smith, 539 U.S. 510; 123 S.Ct. 2527; 156 L.Ed.2d 471 (2003), and Terry Williams v. Taylor, 529 U.S. 362; 120 S.Ct. 1495; 146 L.Ed.2d 389 (2000).

Based on the facts established by the evidence presented, there was no reasonable basis for the Michigan courts to deny relief. Harrington v. Richter, -- U.S. --, 131 S.Ct. 770, 784; 178 L.Ed.2d 624 (2011).

The Fourteenth Amendment guarantees a criminal defendant the right to effective assistance of appellate counsel in his first appeal of right. Evitts v. Lucey, 469 U.S. 387; 105 S.Ct. 830; 83 L.Ed.2d 821 (1985). The standard is the same as that for trial counsel under Strickland: the defendant must show that counsel's performance was deficient and prejudicial.

On Mr. Shaykin's appeal of right his appointed appellate counsel raised two issues: ineffective assistance of trial counsel for failing to object to reading Allen Oliver's preliminary examination testimony to the jury, and insufficient evidence to prove both conspiracy and soliciting. The Michigan

51

Court of Appeals rejected both claims. 2/22/11 Opinion, No. 295883, Appendix 8.

Regarding the ineffective assistance of trial counsel claim, appellate counsel's failure to obtain the evidence included in Petitioner's Exhibits 1 through 34 and Proposed Exhibits 40 through 48 and to seek a remand to enter them into the record, and raise the other issues presented in this brief are below prevailing professional norms.

Several decisions of the United States Supreme Court hold that trial counsel has a duty to investigate. Strickland, Rompilla, Terry Williams, and Wiggins. Implicit in those decisions is that appellate counsel also has a duty to investigate - how else would the defendant enforce his right to have trial counsel investigate the case?

A fair presentation of the issues that counsel raised on appeal of right depended on evidence outside the trial court record which he did not collect and use. Unlike Arizona, which forbids raising claims of ineffective trial counsel on direct appeal, Martinez v. Ryan, 132 S.Ct. 1309 (2012), or Texas, which makes it "virtually impossible" to raised such a claim on direct appeal, Trevino v. Thaler, 133 S.Ct. 1911 (2013), Michigan has a relatively straightforward procedure. People v. Ginther, 390 Mich. 436; 212 N.W.2d 922 (1973), provides for a post-trial evidentiary hearing to raise claims of ineffective assistance of trial counsel. The Michigan Court Rules provide three ways to raise the claim. A motion for new trial filed before the claim of appeal is filed, M.C.R. 6.431(A)(1); a motion for new

52

trial filed within the time for filing the appellant's brief on appeal, M.C.R. 7.208(B)(1); and a motion to remand for a hearing on the issue, M.C.R. 7.211(C)(1). Appellate counsel took none of these steps.

In McFarland v. Yukins, 356 F.3d 688, 711 (6th Cir. 2004) and Mapes v. Coyle, 1711 F.3d 408, 427-429 (6th Cir. 1999), the Sixth Circuit found the defendants were denied effective assistance of appellate counsel and discussed several factors, most of which are relevant here.

The omitted issues were "significant and obvious." There was no contrary authority that would justify not including these in the appellate brief. They are much stronger than the issues raised in the appellate brief. And while counsel raised Issue II in the appellate brief, he did not support it with the evidence that Petitioner has offered in the post-conviction proceedings, which would have been outcome-determinative.

These issues were not raised in the trial court during the time of trial because trial counsel was ineffective, so an evidentiary hearing in the trial court, by way of a motion for new trial or motion to remand, was necessary to develop a record to support them.

A lawyer for many years, appellate counsel William Archer should have recognized these issues. There is no evidence that he reviewed the evidence supporting them, and the omitted issues were not dealt with in the claims he raised, except for his perfunctory argument that trial counsel should have objected to reading Oliver's preliminary examination testimony to the

53

jury.

Counsel met with Mr. Shaykin to go over appellate issues, but he did not develop the record as requested and he filed his brief with a less than complete record on the primary issue.

The Court of Appeals denied relief on the ground that the record did not support the claims raised. It emphasized that appellate review is limited to "mistakes apparent on the record," that he should have requested a Ginther hearing to make a record in the trial court, and it pointed out that the trial court record did not support the claims. Appendix 8, page 4.

Appellate counsel has not explained his reasons for failing to develop the record and for omitting these issues which were obvious from a cursory investigation and his discussion with Mr. Shaykin. His decision to proceed as he did was an unreasonable one. 171 F.3d, 428. And it was prejudicial.

Developing the record on direct appeal to include Petitioner's Exhibits and Proposed Exhibits submitted with his post-appeal filings in the state court and with this Petition would have undercut much of the testimony that the Michigan Court of Appeals credited in its opinion. For example, that Mr. Shaykin showed Oliver and Snodderly maps and an aerial satellite view of Clark's house on his computer, Appendix 8, p 2, which the State's experts said they did not find (10/21/09 Motion Transcript, 14); that the plan was to throw Clark in the trunk of Mr. Shaykin's car, Appendix 8, pp 3 and 8, which was impossible because of the built in speaker box, Petitioner's Exhibits 23 p 3, 41;  Oliver's claim that Mr. Shaykin said he

54

found Clark with missing persons posters, Appendix 8, p 3, while Oliver told police he said he found her with a reverse phone number look up, Petitioner's Exhibit 22 p 2; Oliver's assertion that he was a thief but not a kidnapper, Appendix 8, pp 3-4, when in fact he had been convicted of kidnapping and was on parole for it at the time of these events, Petitioner's Exhibits 8, 19B; the assumption that Mr. Shaykin's counsel had been able to cross examine Oliver at the preliminary examination, Appendix 8, p 4, when in fact the court had stopped him from asking about Oliver's criminal record (PE 157-158); it assumed an objection would have been denied, Appendix 8, p 7, although an objection would have allowed an evidentiary hearing to offer the evidence discussed in issue I, supra; it assumed from an utterly silent record that the trial court found "diligent, good faith efforts" to produce Oliver, Appendix 8, p 6, although that is unsupported by any evidence or any statement of the trial court; and the Court of Appeals concluded that on the record before it there was no showing of an abuse of discretion in admitting Oliver's preliminary examination testimony. Appendix 8, p 6.

All of these conclusions would have changed if the Court of Appeals had before it the evidence in Petitioner's Exhibits 1-34 and Proposed Exhibits 40-48.

The Court should grant the writ of habeas corpus because the state courts violated Mr. Shaykin's right to effective assistance of appellate counsel and unreasonably applied Evitts, Strickland, Rompilla, Wiggins, and Terry Williams.

Relief

Mr. Shaykin respectfully requests the Court will grant the writ of habeas corpus and order respondent to release him if he is not promptly re-tried.

Respectfully submitted,

August 26, 2014     *Mark R. Shaykin*
Mark Ronald Shaykin 314630
Petitioner pro se
Macomb Correctional Facility
34625 26 Mile Road
New Haven, MI 48048-0999

56