Mark Ronald Shaykin #314630
Macomb Regional Facility
34625 26 Mile Road
New Haven, Michigan 48048-0999

January 15, 2015

United States District Court
Eastern District of Michigan
321 West Lafayette Blvd.
Detroit, Michigan 48226

Re: Shaykin v. Romanowski 2:14-cv-13399-LPZ-DRG

Dear Clerk,

After I filed my petition for Writ of Habeas Corpus in this case, there were some grammatical errors on some of the pages. I have enclosed corrected pages to be added to my petition of Writ of Habeas Corpus.

I have enclosed two copies for the court and served a copy on Laura Moody, Assistant Attorney General.

Proof of Service is enclosed. Please let me know if you have any questions. Thank you very much.


Respectfully,

Mark R. Shaykin #314630


cc: Laura Moody Assistant Attorney General
Encls.

gotta go to court coming up pretty soon anyways." Petitioner's Exhibit 22, page 1. Police took Oliver's statement and released him.

On June 20, 2007 Detective Johnson subpoenaed Oliver to testify against Mr. Shaykin at the Grand Jury on June 27, 2007. Oliver did not appear to testify. Petitioner's Exhibits 9-11.

Oliver failed to appear in court on his drug case on June 25, 2007. From the docket he appears to have been captured later that day and released again on June 26, 2007. Petitioner's Exhibit 7, page 2, and Exhibit 8A. On July 23, 2007 he failed to appear in court on his failure to register case. Petitioner's Exhibit 13. The next day, he failed to appear in court on his drug case, and he again failed to appear on August 7, 2007. Petitioner's Exhibit 7, page 2, and Exhibit 8A.

On the meantime, on May 30, 2007, Oliver entered a plea of not guilty by reason of insanity in the failure to register as a sex offender case. Petitioner's Exhibit 14.

Oliver finally appears to have been captured on August 7, 2007. He was found incompetent to stand trial in the failure to register as a sex offender case; the court ordered him confined to a treatment facility. Petitioner's Exhibit 8A, page 2, and Exhibit 15.

While in the treatment facility, Oliver was charged with failure to comply with an order or signal of a police officer. Petitioner's Exhibit 16. Two weeks later, on November 14, 2007, the court found him competent to stand trial. Petitioner's Exhibit 17. It sentenced him to two years in prison after finding

9

that he was "not amenable to community control." Petitioner's Exhibit 18.

On his return to jail from court, Oliver attempted suicide by taking an overdose of pills and he was hospitalized for two days. Petitioner's Exhibit 34 and Proposed Exhibit 47. None of this information was presented at Mr. Shaykin's trial or on his appeal of right.

On July 28, 2009, Oliver was transported from an Ohio prison to Lenawee County District Court to testify at the preliminary examination in this case. Afterwards he was returned to prison in Ohio. Petitioner's Exhibit 4.

On September 15, 2009 Oliver was taken from the Ohio prison to the Allen County Ohio Courthouse where he was given a subpoena in this case along with a witness fee check in the amount of $52.00. Oliver was returned to prison. He was released from prison on September 16, 2007 with instructions to appear before the Lenawee County Circuit Court for Petitioner's trial on October 27, 2009. Petitioner's Exhibits 5 and 6. He did not appear and the trial court allowed the prosecution to read his preliminary examination testimony to Mr. Shaykin's jury.

Mr. Shaykin's trial counsel did not present the following impeaching evidence during trial, and his appellate counsel did not raise it on appeal.

On May 30, 2007, two weeks before the events at issue in this case, Oliver pled not guilty by reason of insanity in the Ohio court. After a psychiatric exam, he was found incompetent by an Ohio court to stand trial in August 2007. Petitioner's

10

corrected page

impression" that Mr. Shaykin went to the door at Clark's house but the lady who answered did not know him (T 76). The assertion that Mr. Shaykin went there was not true and it was inadmissible hearsay. The lady to whom Smith referred was not called as a witness at any time nor do police reports reflect any such statement by her.

Counsel tried to get Smith to disclose the rewards Oliver requested and received for his testimony; the trial court forbade that inquiry until "after Oliver testifies" (T 78-79). Oliver did not show up, the prosecution read his preliminary examination testimony to the jury, and counsel abandoned any effort to show the rewards Oliver requested and received.

Counsel told the court that Mr. Shaykin would not testify because his plea to a related charge in Ohio could be used against him (T 198-199). He did not try to exclude evidence of Mr. Shaykin's Alford plea in Ohio so that Mr. Shaykin could testify in his own defense without fear of being impeached by the plea. The plea form that Mr. Shaykin, his lawyer, the prosecutor, and the judge signed in Ohio specifically states, "By this plea of guilty I DO NOT admit committing the offense ..." and the record shows that this was done in open court. Petitioner's Exhibit 31 page 15 and Exhibit 31A page 2 (emphasis in original).

Counsel did not present evidence and argument that Mr. Shaykin did not use a computer to commit any crime. He did not call as a witness Detective Emrick who would have testified that he examined Mr. Shaykin's computer and found no aerial

16

-corrected page

job"; that the alleged kidnapping plan was Oliver's idea; that all Mr. Shaykin wanted to do was talk to Ashley Clark (T 84-86); and, as Snodderly testified at the preliminary examination, Oliver "was the one that kinda came up with the whole thing." (PE 72).

Impeaching Oliver with his repeated failures to appear in court, absconding from his parole placements, and the Ohio courts' findings that he was "not amenable to community control" would have helped convince the jury that he's not worthy of their trust.

Jurors acquitted Mr. Shaykin of four of the eight charges against him. Without Oliver's testimony, or had counsel impeached Oliver's testimony with his long prior record and the evidence listed in arguments III and IV, below, they may well have acquitted him of the other four. These errors are sufficient to undermine confidence in the outcome of the trial. Counsel did not fulfill his duty, as described in Strickland, "to make the adversarial testing process work." 104 S.Ct., 2066.

The Court should grant the writ of habeas corpus because the state courts violated Mr. Shaykin's right to effective assistance of counsel and unreasonably applied Strickland, Davis, Rompilla, Wiggins, and Terry Williams.

31

November 14, 2007. Petitioner's Exhibits 14-15. Counsel botched an attempt to impeach Oliver about this at the preliminary examination (PE 170, Petitioner's Exhibit 32, p 4) and he never followed up on it. Oliver's plea of not guilty by reason of insanity and the Ohio court's finding of incompetency may have been grounds to exclude his testimony completely under M.R.E. 601, and they certainly would have changed the jury's perception of his credibility.

Evidence of a key witness's mental condition is relevant and admissible. Greene v. Wainwright, 634 F.2d 272, 276-277 (5th Cir. 1981); United States v. Lindstrom, 698 F.2d 1154, 1160-1168 (11th Cir. 1983). The court in United States v. Partin, 493 F.2d 750 (5th Cir. 1974) explained why this evidence is important: "... the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth. ... It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know, and correctly relate the truth. ... In simple language, the defendant has the right to explore every facet of relevant evidence pertaining to the credibility of those who testify against him. .. Partin had the right to attempt to challenge [the witness's] credibility with competent or relevant evidence of any mental defect or treatment at a time probatively related to the time period about which he was attempting to testify." 493 F.2d, 763. Trial

33

corrected page

VI. TRIAL COUNSEL'S FAILURE TO OBJECT TO THE PROSECUTION'S IMPROPER ARGUMENT THAT BOLSTERED THE CREDIBILITY OF OLIVER AND SNODDERLY DENIED MR. SHAYKIN HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL.

The decision of the Michigan courts involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. 2254(d)(1).

Here the state courts unreasonably applied <u>Strickland v. Washington</u>, 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984), and <u>Berger v. United States</u>, 295 U.S. 78; 55 S.Ct. 629; 79 L.Ed. 1314 (1935).

Based on the facts established by the evidence presented, there was no reasonable basis for the Michigan courts to deny relief. <u>Harrington v. Richter</u>, -- U.S. --, 131 S.Ct. 770, 784; 178 L.Ed.2d 624 (2011).

Counsel acknowledged that the State's case came down to whether the jury believed Oliver and Snodderly. He did not object when Detective Smith testified that after talking to Oliver and Snodderly it was his impression that "there is something to this crime," that he was not "buying what [Mr. Shaykin] was selling," and the prosecutor argued that Smith "realized [Oliver and Snodderly] were telling the truth."

Smith's opinion as to the truthfulness or untruthfulness of other witnesses is inadmissible, M.R.E. 701, and the prosecutor's argument based on this inadmissible evidence was improper.

Counsel's failure to object to this testimony and argument fell below prevailing professional norms and it was prejudicial.

46

corrected page

Court of Appeals rejected both claims. 2/22/11 Opinion, No. 295883, Appendix 8.

Regarding the ineffective assistance of trial counsel claim, appellate counsel's failure to obtain the evidence included in Petitioner's Exhibits 1 through 34 and Proposed Exhibits 40 through 48 and to seek a remand to enter them into the record, and raise the other issues presented in this brief are below prevailing professional norms.

Several decisions of the United States Supreme Court hold that trial counsel has a duty to investigate. Strickland, Rompilla, Terry Williams, and Wiggins. Implicit in those decisions is that appellate counsel also has a duty to investigate – how else would the defendant enforce his right to have trial counsel investigate the case?

A fair presentation of the issues that counsel raise on appeal of right depended on evidence outside the trial court record which he did not collect and use. Unlike Arizona, which forbids raising claims of ineffective trial counsel on direct appeal, Martinez v. Ryan, 132 S.Ct. 1309 (2012), or Texas, which makes it "virtually impossible" to raised such a claim on direct appeal, Trevino v. Thaler, 133 S.Ct. 1911 (2013), Michigan has a relatively straightforward procedure. People v. Ginther, 390 Mich. 436; 212 N.W.2d 922 (1973), provides for a post-trial evidentiary hearing to raise claims of ineffective assistance of trial counsel. The Michigan Court Rules provide three ways to raise the claim. A motion for new trial filed before the claim of appeal is filed, M.C.R. 6.431(A)(1); a motion for new

52

corrected page

found Clark with missing persons posters, Appendix 8, p 3, while Oliver told police he said he found her with a reverse phone number look up, Petitioner's Exhibit 22 p 2; Oliver's assertion that he was a thief but not a kidnapper, Appendix 8, pp 3-4, when in fact he had been convicted of kidnapping and was on parole for it at the time of these events, Petitioner's Exhibits 8, 19B; the assumption that Mr. Shaykin's counsel had been able to cross examine Oliver at the preliminary examination, Appendix 8, p 4, when in fact the court had stopped him from asking about Oliver's criminal record (PE 157-158); it assumed an objection would have been denied, Appendix 8, p 7, although an objection would have allowed an evidentiary hearing to offer the evidence discussed in issue I, _supra_; it assumed from an utterly silent record that the trial court found "diligent, good faith efforts" to produce Oliver, Appendix 8, p 6, although that is unsupported by any evidence or any statement of the trial court; and the Court of Appeals concluded that on the record before it, there was no showing of an abuse of discretion in admitting Oliver's preliminary examination testimony. Appendix 8, p 6.

All of these conclusions would have changed if the Court of Appeals had before it the evidence in Petitioner's Exhibits 1-34 and Proposed Exhibits 40-48.

The Court should grant the writ of habeas corpus because the state courts violated Mr. Shaykin's right to effective assistance of appellate counsel and unreasonably applied Evitts, Strickland, Rompilla, Wiggins, and Terry Williams.

55

corrected page

## PROOF OF SERVICE

I swear and declare on penalty of perjury that on January 15, 2015 I filed the corrected pages for my Writ of Habeas Corpus with the Clerk of the Court for the United States District Court/Eastern District of Michigan. I further declare that I have sent a copy of these corrected pages to Ms. Laura Moody, Assistant Attorney General/ Appellate Divison, P.O. Box 30217 Lansing, Michigan 48909.

Respectfully submitted,

Mark R. Shaykin #314630



