STATE OF MICHIGAN
LENAWEE COUNTY CIRCUIT COURT

THE PEOPLE OF THE
STATE OF MICHIGAN,

    Plaintiffs,

V

MARK RONALD SHAYKIN,

    Defendant.

No. 09-14329-FC
Hon. Timothy Pickard

*14329*

---

Lenawee County Prosecuting Attorney
425 N. Main
Adrian, MI 49221

---

Mark Ronald Shaykin 314630
Defendant in pro per
Ionia Correctional Facility
1576 West Bluewater Highway
Ionia, MI 48846

---



FILED
39TH CIRCUIT COURT

MAR 2 2 2013

Lenawee County Clerk
Adrian, Michigan

---

## DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT

1. Mr. Shaykin was tried by a Lenawee County, MI jury before the Honorable Timothy P. Pickard. He did not testify at the trial. On October 28, 2009 the jury found him guilty of four charges: conspiracy to commit unlawful imprisonment, MCL 750.157a and MCL 750.349b; two counts of soliciting unlawful imprisonment, MCL 750.157b(3) and MCL 750.349b; and using a computer to commit solicitation of unlawful imprisonment. MCL 752.797(3)(e). The jury found him not guilty of conspiracy to commit murder, MCL 750.157a and MCL 750.316(1)(a); two counts of solicitation to commit murder, MCL 750.157b(2); and using a computer to commit solicitation to commit murder. MCL

1

752.797(3)(f). On December 10, 2009, this Court sentenced Mr. Shaykin as a fourth felony offender, MCL 769.12, to life in prison on all counts. He is serving those sentences at the Ionia Correctional Facility, Ionia, MI.

2. Mr. Shaykin appealed to the Michigan Court of Appeals. It affirmed his convictions and sentences in an unpublished per curiam opinion on February 22, 2011. COA No. 295883. The Michigan Supreme Court denied leave to appeal on September 26, 2011, SCt No. 142952, 490 Mich 872 (2011). The United States Supreme Court denied certiorari on February 21, 2012, Shaykin v Michigan, 132 SCt 1590 (2012), and it denied rehearing on April 16, 2012, Shaykin v Michigan, 132 SCt 1963 (2012).

3. Robert E. Jameson, P.C. (P56469), 526 N. Main Street, Adrian, MI 49221, 517-264-2999, attyjameson@tc3.net, represented Mr. Shaykin at trial, sentencing, and in pretrial proceedings. William H. Archer (P38166) 700 West Ash, Suite A, Mason, MI 48854, 517-244-1122, represented Mr. Shaykin on appeal to the Michigan Court of Appeals. Mr. Shaykin represented himself in the Michigan and United States Supreme Courts.

4. The relief Mr. Shaykin seeks is a new trial and correction of his presentence report.

5. The grounds for the relief, and the facts supporting them are:

I. Mr. Shaykin's Sixth Amendment right to confront the witnesses against him was violated when prosecution witness Allen Oliver did not appear and the trial court allowed the prosecution to read his preliminary examination testimony to

2

the jury.

II.   Mr. Shaykin was denied effective assistance of counsel at trial where his counsel did not object to the prosecution reading Allen Oliver's preliminary examination testimony to the jury.

III. Mr. Shaykin was denied effective assistance of counsel at trial where:

A.   Trial counsel failed to impeach Allen Oliver's testimony with the following evidence:

1.   Oliver had been found incompetent to stand trial in Ohio during the time of the events about which he testified at the preliminary examination.

2.   Oliver's criminal record, including a conviction for kidnapping.

3.   Oliver received benefits from his testimony that were not disclosed to the jury.

4.   Oliver testified "I have no idea what a grand jury is" yet he had been indicted by at least three grand juries in Ohio.

5.   Oliver testified that Mr. Shaykin showed him satellite images on the computer; the state's expert said there were none.

6.   Oliver testified that he lived on Western with his brother and a couple of friends, but told police he lived at a different address, his brothers said they lived at different addresses, and Oliver's sex offender registration was to a different address.

7.   Oliver testified that Mr. Shaykin told him he found Ashley Clark with missing persons posters, but Oliver told police Defendant said he found her with a reverse phone number look-up.

8.   Oliver testified that he smoked marijuana "pretty much" every day but told police he did not use it.

9.   Oliver testified that his brothers went to a warehouse while he talked with Mr. Shaykin, although he told police that Mr. Shaykin broke into the warehouse and stole speakers.

10.   Oliver testified that he waited in the car with Mr. Shaykin until everyone got back into his car after they went to the warehouse, although the others said they walked from the warehouse to Mr. Shaykin's house.

11.   Oliver testified that Mr. Shaykin gave him a map that showed 883 Colburn "so that we didn't get lost," although his partner Josh Snodderly lived 4-1/2 blocks

3

away at 1307 Colburn.

B.  Trial counsel failed to impeach prosecution witness Josh Snodderly's testimony with the following evidence:

1.  Snodderly's prior criminal record. When questioned by police, Snodderly was unsure whether he had outstanding warrants.

2.  Snodderly said Mr. Shaykin showed him maps on the computer; the state's expert said there were none.

3.  Snodderly testified that he lived on Western Avenue at the time of these events, but he told police he lived at 1307 Colburn.

4.  Snodderly testified that Mr. Shaykin told him to throw Ashley Clark in the trunk of Mr. Shaykin's car and that there was no speaker box in the trunk. Police photos of Mr. Shaykin's car show there was no room for her in the trunk because of a large speaker box that is built into the trunk.

5.  Snodderly testified that he was not aware of the warehouse until he got to Michigan, yet he told police that the reason they came to Michigan was to break into the warehouse.

6.  Snodderly testified that he does not know Mr. Shaykin's son, yet he told police that he does.

7.  Snodderly testified that they made no stops on the way to Adrian from Toledo, yet they stopped at Meijers and later to pick up a computer.

C.  Trial counsel failed to impeach prosecution witness Ashley Clark's testimony with the following evidence:

1.  Clark testified that Mr. Shaykin was to give her $20, yet she told police he was to give her $400. The tapes of her phone calls to Mr. Shaykin also show that she demanded $400 - and other amounts of money - from him.

2.  Clark told the Adrian police that Mr. Shaykin had someone assault her and hold her against her will in Toledo, yet at trial she testified that she knew nothing about that except what the police told her.

D.  Trial counsel failed to impeach prosecution witness Detective Langford's testimony with the following evidence:

1.  Langford testified that a missing persons poster seeking Ashley Clark was found in Mr. Shaykin's car. That was not true and it is not listed on the inventory of the car.

2.  Langford testified that Toledo police found a map to Clark's house in Mr. Shaykin's car. That was not

4

true and it is not listed on the inventory of the car.

    3.    Langford testified that a large knife, People's Exhibit 9, was found on Mr. Shaykin, Oliver, or Snodderly. That was not true. Police reports and other witnesses substantiate that the knife was not on any of them, it was given to them at 1502 Western Avenue.

E.    Trial counsel failed to impeach prosecution witness Detective Smith's testimony with the following evidence:

    1.    Smith testified that People's Exhibit 9 was "one of the knives that one of the witnesses said they received from" Mr. Shaykin. This was misleading. No witnesses said Mr. Shaykin gave them more than one knife. Snodderly testified that Oliver stole a small pocket knife, and it was not in evidence.

    2.    Smith testified that a bandanna was found in the trunk of Mr. Shaykin's car. This was not true.

    3.    Smith testified that officers took an orange cell phone from Mr. Shaykin. There was no orange cell phone involved at all. Police photos show a blue cell phone and a silver one; and the police report lists a single Nokia cell phone – this was the blue one they seized from Mr. Shaykin.

    4.    Smith testified "it was my impression" that Mr. Shaykin went to the door at Clark's house but the lady who answered did not know him. The assertion that Mr. Shaykin went there was not true and it was inadmissible hearsay. The lady to whom Smith referred was not called as a witness at any time nor do police reports reflect any such statement by her.

    5.    Counsel tried to get Smith to disclose the rewards Oliver wanted and received for his testimony, the court forbade that inquiry until "after Oliver testifies," Oliver did not show up, they read his transcript to the jury, and counsel abandoned any effort to show the rewards he requested and received.

IV.    Trial counsel was ineffective when he failed to present evidence in support of the defense and/or make timely objections, as follows:

A.    Trial counsel was ineffective for failing to present Mr. Shaykin's testimony. He should have excluded evidence of Mr. Shaykin's Alford plea in Ohio so that he could testify in his own defense without fear of being impeached by it.

5

B.   Trial counsel should have used the recordings of the phone calls from Ashley Clark to Mr. Shaykin to show that she was trying to extort money from him.

C.   Trial counsel failed to present evidence and argument that Mr. Shaykin did not use a computer to commit the crime of solicitation of unlawful imprisonment.

> 1.   Trial counsel did not call as a witness Detective Emerrick who would have testified that he examined Mr. Shaykin's computer and found no aerial photos or satellite images of 883 Colburn on it.
> 2.   Trial counsel did not point out that Oliver and Snodderly agreed that the videos of Ashley Clark they saw were on TV not on the computer.
> 3.   Trial counsel failed to make the legal argument that no computer was used to commit the crime of solicitation of unlawful imprisonment where there was no claim that he used a computer to solicit anyone.

C.   Trial counsel was ineffective for failing to obtain the fingerprint analysis on the knife that was People's Exhibit 9. On May 20, 2008 the Lucas County Ohio prosecutor represented that it was being checked for finger prints. The results will show that Mr. Shaykin's fingerprints were not on it because he did not give it to Oliver and Snodderly, they stole it from a display case in his house.

D. Trial counsel was ineffective where he failed to call Leo Sanscrant as a witness and actually waived his presence. Sanscrant was on the State's witness list, he was in the car when they went to Clark's house, and the story he told police was so incredible it would have been obvious to the jury they were making it up.

V.   Trial counsel was ineffective for failing to object to the prosecution's argument bolstering the credibility of

6

Oliver and Snodderly, where he acknowledged that the entire case came down to whether the jury believed them yet he did not object when Detective Smith testified and the prosecutor argued that Smith "realized they were telling the truth."

VI. The Court violated Mr. Shaykin's Fourteenth Amendment right to a fair trial when it refused an investigator for the defense and denied the defense discovery motions.

VII. The presentence report contains several errors which should have been corrected but were not; some were addressed at sentencing but were not corrected, others were not raised because of trial counsel's error.

VIII. Mr. Shaykin was denied effective assistance of appellate counsel when his lawyer did not raise on appeal the issues listed above.

6. Issue II and parts of Issue VII were raised on appeal. Issue II was raised by appellate counsel and Issue VII was raised in a Standard 4 pro per supplemental brief. Mr. Shaykin has received evidence that was not part of the record at the time of that appeal, and these claims are based on the new evidence which he seeks to add to the record. His motion pursuant to MCR 6.507 is submitted herewith.

7. Mr. Shaykin requests appointment of counsel.

8. I declare that the statements above are true to the best of my knowledge, information and belief.

7

## Relief

Mark R. Shaykin respectfully requests that this Honorable Court will appoint counsel to represent him, order the prosecution to respond to this motion, hold an evidentiary hearing, expand the record, dismiss the charge of using a computer to commit solicitation, and order a new trial on the other charges.

Respectfully submitted,

March 18, 2013

Mark Ronald Shaykin

## PROOF OF SERVICE

I swear and declare on penalty of perjury that on March 18, 2013, I served a copy of this motion and supporting memorandum and my motion to expand the record with exhibits and supporting memorandum on the Lenawee County Prosecuting Attorney, 425 N. Main, Adrian, MI 49221, by first class mail via the Michigan Department of Corrections Expedited Legal Mail system.

Mark Ronald Shaykin

8